UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| In re:<br><br>X-TREME BULLETS, INC.,<br><br>Debtor.<br><br>HOWELL MUNITIONS & TECHNOLOGY, INC., AMMO LOAD WORLDWIDE, INC., CLEARWATER BULLET, INC., HOWELL MACHINE, INC., FREEDOM MUNITIONS, LLC, LEWIS-CLARK AMMUNITION COMPONENTS, LLC, and COMPONENTS EXCHANGE, LLC,<br><br>Jointly Administrated Debtors. | Case No. 3:19-cv-00637-MMD<br><br>Member Cases:<br>3:19-cv-666-MMD, 3:19-cv-667-MMD, and 3:20-cv-00117- MMD<br><br>Jointly Administered Under Bankruptcy. Case No. 18-50609-BTB (Lead Case)<br><br>Chapter 11 |
| UNITED STATES OF AMERICA DEPARTMENT OF THE TREASURY ALCOHOL AND TOBACCO TAX AND TRADE BUREAU,<br><br>Appellant,<br>v.<br><br>X-TREME BULLETS, INC., AMMO LOAD WORLDWIDE, INC., CLEARWATER BULLET, INC., FREEDOM MUNITIONS, LLC, HOWELL MACHINE, INC., HOWELL MUNITIONS & TECHNOLOGY, INC., LEWIS-CLARK AMMUNITION COMPONENTS, LLC, COMPONENTS EXCHANGE, LLC, KASH CA, INC.; DAVID HOWELL, Z.B. N.A. dba ZIONS FIRST NATIONAL BANK, CFO SOLUTIONS, LLC dba ADVANCED CFO, Matthew McKinlay and Valerie Grindle,<br><br>Appellees. | ORDER |

///

///

## I. SUMMARY

Immediately before the Court is the fourth appeal from the United States Bankruptcy Court for the District of Nevada ("Bankruptcy Court") in this consolidated case. Appellant the United States of America, on behalf of the Department of the Treasury Alcohol and Tobacco Tax and Trade Bureau ("TTB"), challenges the Bankruptcy Court's order disallowing a claim TTB filed solely against one of several Debtors-Appellees—Howell Munitions & Technology, Inc. ("HMT")—in HMT's Chapter 11 case ("Disallowance Order"). (*See* Case No. 3:19-cv-00637-MMD (ECF Nos. 51 52, 61).) Because the Bankruptcy Court abused its discretion in rendering its ruling without sufficient findings, the Court will vacate the Disallowance Order and remand for further proceedings as noted herein.[1]

## II. BACKGROUND

The following facts are not in dispute and are based on the records before the Court and the arguments presented at a hearing the Court held on July 9, 2020 ("Hearing").

This case concerns the Chapter 11 bankruptcy proceedings of X-Treme Bullets, Inc., Ammo Load Worldwide, Inc., Clearwater Bullet, Inc., Freedom Munitions, LLC, Howell Machine, Inc., HMT, Lewis-Clark Ammunition and Components, LLC and Components Exchange, LLC, the debtors and debtors-in-possession (collectively, "Debtors-Appellees"). Debtors-Appellees filed Chapter 11 petitions for relief in the Bankruptcy Court on June 8, 2018. (*E.g.*, ECF No. 24-2 at 2.) Their Chapter 11 bankruptcies were jointly administered under Bankruptcy Case No. 3:18-bk-50609-BTB. (*Id.*) TTB has filed four appeals—Case Nos. 3:19-cv-00637-MMD, 3:19-cv-00666-MMD, 3:19-cv-00667-MMD, 3:20-cv-00117-MMD—concerning various orders the Bankruptcy

///
///
///

---

[1] The Court has considered TTB's opening brief (ECF No. 61), Debtors-Appellees' answering brief (ECF No. 66) and TTB's reply (ECF No. 69).

2

Court issued in the underlying bankruptcy proceedings.[2] All four appeals have been consolidated under the lead case (Case No. 3:19-cv-00637-MMD).[3]

This Order addresses only the Disallowance Order related to the fourth appeal (ECF No. 62-2 at 432–35 (*amended* order entered on the docket January 31, 2020); 437–40 (order entered on the docket February 5, 2020))[4]. The Disallowance Order concerns a proof of claim ("POC") which was executed in HMT's Chapter 11 case—Claim 52-1 ("TTB Claim")—on December 3, 2018. (ECF No. 62-1 at 461–72.) The TTB Claim is based on a federal tax lien TTB has against a non-debtor affiliate of Debtors-Appellees, Twin River, which was filed in January 2017 ("Lien"). (*Id.*) The Lien arose from Twin River's failure to pay federal excise taxes, pursuant to 26 U.S.C. § 6201, for Twin River's manufacture of ammunition. (*See* ECF No. 62-1 at 465, 468.) The TTB Claim asserts against HMT an aggregate amount of approximately $12,183,415—about $5,079,998 secured and about $7,103,416 unsecured. (*Id.* at 462, 465, 468.)

Debtors-Appellees objected to the TTB Claim ("Objection"). (ECF No. 62-2 at 2–22.) The Bankruptcy Court sustained the Objection but made no oral ruling as to why it did so. (*See id.* at 399.) In the written Disallowance Order,[5] the Bankruptcy Court made two particular findings that the parties indicated are at issue. First, the Bankruptcy Court found that "[t]he TTB Claim is not a prima facie valid claim in that it fails to allege facts sufficient

///

---

[2] Appellees also include Zions Bancorporation, N.A. dba Zions First National Bank ("Zions"), which was Debtors-Appellees' primary pre-petition secured creditor. (ECF No. 62-2 at 7, 27–28.) On July 19, 2018, Zion filed a POC against all Debtors-Appellees for approximately $17,529,219. (*Id.*) Appellee Kash CA acquired from Zions Zions' Secured Claim, and the liens encumbering the assets of Debtors-Appellees and non-debtor affiliates of the Debtors-Appellees, Twin River Contract Loading, Inc. ("Twin River") and Big Canyon Environmental, LLC ("Big Canyon"), by paying Zions $8.8 million cash in September 2019. (*Id.* at 31; ECF No. 33-3 at 45–112.)

[3] All citations to the docket are from the lead case.

[4] The "amended order" which was issued before the "order" simply disallows the TTB Claim while the other order disallows the claim with prejudice. (*Compare* ECF No. 62-2 at 434 *with id.* at 439.)

[5] To be clear, the Bankruptcy Court also adopted Debtors-Appellees' proposed disallowance order without expressly addressing TTB's written objections to the proposed order (*see, e.g.*, ECF No. 62-2 at 401–04).

to support a legal liability of HMT to the TTB." (ECF No. 62-2 at 434, 439.) Second, the Bankruptcy Court found that "TTB has failed to meet its evidentiary burden of demonstrating that the TTB Claim is valid." (*Id.*) The Bankruptcy Court additionally found that TTB "has *no allowed secured claim* against any Debtor pursuant to [§] 506 of the Bankruptcy Code." (*Id.* (emphasis added).)

TTB requests that this Court reverse the Bankruptcy Court's ruling disallowing the TTB Claim and require Debtors-Appellees to file an adversary proceeding if they wish to contest the extent and validity of the Lien. (*E.g.*, ECF No. 61 at 29; ECF No. 69 at 19.)

### III.    LEGAL STANDARD[6]

This Court has jurisdiction to hear timely appeals from a judgment, order, or decree of the Bankruptcy Court under 28 U.S.C. § 158(a).

The Court reviews "the bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error." *In re Bonham,* 229 F.3d 750, 762 (9th Cir. 2000). The Bankruptcy Court's factual findings are clearly erroneous only if the findings "leave the definite and firm conviction" that the Bankruptcy Court made a mistake. *In re Rains*, 428 F.3d 893, 900 (9th Cir. 2005). "A bankruptcy court abuses its discretion if it applies the law incorrectly or if it rests its decision on a clearly erroneous finding of a material fact." *In re Brotby*, 303 B.R. 177, 184 (B.A.P. 9th Cir. 2003). A bankruptcy court also abuses its discretion where "it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *In re Plyam*, 530 B.R. 456, 461 (B.A.P. 9th Cir. 2015).

The Court may affirm the bankruptcy court's decision "on any ground fairly supported by the record." *In re Warren*, 568 F.3d 1113, 1116 (9th Cir. 2009).

///

///

---

[6]To the extent the parties dispute the applicable standards of review (*e.g.*, ECF No. 66 at 13; ECF No. 69 at 3–4), the Court sets forth the well established and applicable standards and does not address the matter further.

## IV. DISCUSSION

TTB first argues that the Bankruptcy Court erred in concluding that the TTB Claim is not valid. (ECF No. 61.) This argument is undergirded by TTB's contentions that: (1) the TTB Claim was *prima facie* valid; (2) Debtors-Appellees did not provide substantive evidence, beyond a declaration, to overcome its burden to rebut the presumption of validity; and (3) even if Debtors-Appellees did overcome their burden, TTB nonetheless produced sufficient evidence in response to Debtors-Appellees' Objection to show that HMT should be liable for the Lien. (ECF No. 61 at 9–19; ECF No. 69 at 12–14). TTB additionally argues that the Bankruptcy Court erred in finding that it had "no secured claim"—as opposed to its actual finding of "no allowed secured claim"—because it did not determine the relative priority of the Lien. (ECF No. 61 at 23–28.) TTB argues that such a determination requires an adversary proceeding. (*Id.*) TTB additionally contends an evidentiary hearing should have been conducted in light of Debtors-Appellees' denial that HMT was liable for the Lien. (*Id.* at 20–23.)

Debtors-Appellees counter, relevantly arguing that TTB failed to carry its burden to show that it had a valid claim against HMT and the TTB Claim is irreparably deficient. (ECF No. 66 at 22–32.) At the Hearing, Debtors-Appellees made clear their belief that this was the primary issue before the Court. Debtors-Appellees, whose proposed order the Bankruptcy Court adopted, essentially merges the Bankruptcy Court's two claim-validity findings noted above. They specifically contend that the Bankruptcy Court's finding that the TTB Claim was not *prima facie* valid is tantamount to its conclusion that TTB failed to meet its evidentiary burden. Debtors-Appellees insist that an evidentiary hearing was not required. (*Id.* at 32.) They additionally in gist argue that the Bankruptcy Court's ruling that TTB has "no allowed secured claim" is correct as a matter of law for various reasons. (*Id.*

///
///
///
///

5

at 32–41.) Further, they contend that the determination of "no allowed secured claim" was properly made without an adversary proceeding. (*Id.* at 41–45).[7]

The Court will initially address the Bankruptcy Court's two first findings which cumulatively concern the validity of the TTB Claim before addressing the third finding that TTB "has no allowed secured claim." The Court will then consider TTB's request that the Court require Debtors-Appellees to file an adversary proceeding and contention that an evidentiary hearing was warranted.

### A. The Bankruptcy Court's Findings that the TTB Claim Was Not *Prima Facie* Valid and that the TTB Failed to Meet Its Evidentiary Burden

A consideration of the Bankruptcy Court's *prima facie* finding and its evidentiary conclusion, separately or merged, leads to the same ultimate conclusion—that the Bankruptcy Court abused its discretion by failing to make sufficient findings in sustaining the Objection to allow for review of its decision. *See, e.g., In re Bencomo*, No. ADV 13-01451-BR, 2015 WL 3451546, at *1 (B.A.P. 9th Cir. June 1, 2015) ("The bankruptcy court, however, did not make findings that allow us to review how it resolved the Debtor's objections . . . [a]s a result, we VACATE the judgment and REMAND the case to the bankruptcy court."); *see also First Yorkshire Holdings, Inc. v. Pacifica L 22, LLC (In re First Yorkshire Holdings, Inc.)*, 470 B.R. 864, 870 (9th Cir. BAP 2012) (providing that a

///
///
///
///

---

[7]Debtors-Appellees raise various other ancillary issues that are either immaterial or not immediately before the Court. For example, Debtors-Appellees contend that due to the passage of the governmental unit bar date, TTB has no claim against any other Debtors-Appellees (*see, e.g.*, ECF No. 66 at 20, 22). However, there is no dispute or controversy on the issue (*see, e.g., id.* at 22 (citing ECF No. 62-2 at 65 (TTB acknowledging as much))). Debtors-Appellees also argue that amendment to the POC would be untimely and improper on the premise that new allegations would not relate back to TTB's timely filed POC. (*E.g.*, ECF No. 66 at 29–30). But TTB admits that it has never sought to amend the POC (*see* ECF No. 69 at 10–11) so the issue of relation back has not been properly submitted to the Bankruptcy Court. (*See also* ECF No. 62-2 at 434 (finding "[t]he TTB has filed no amendment to the TTB Claim").)

1  judgment may be vacated and case remanded to the bankruptcy court to make the
2  requisite findings).

3  Under Title 11 of the United States Code § 501 a creditor may present its claim
4  against a debtor to the bankruptcy court by filing a POC. *Lundell v. Anchor Const.*
5  *Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000) (citing 11 U.S.C. § 501). The burden
6  of proof for such claims "rests on different parties at different times." *In re Consol. Pioneer*
7  *Mortg.*, 178 B.R. 222, 225 (B.A.P. 9th Cir. 1995), *aff'd sub nom. In re Consol. Pioneer*
8  *Mortg. Entities*, 91 F.3d 151 (9th Cir. 1996) (quoting *In re Allegheny Int'l, Inc.,* 954 F.2d
9  167, 173 (3d Cir.1992)).

10  The initial burden to establish the POC's *prima facie* validity lies with the claimant.
11  *Id.* "The burden of going forward then shifts to the objector to produce evidence sufficient
12  to negate the *prima facie* validity of the filed claim." *Id.* (quoting *In re Allegheny Int'l, Inc.*,
13  954 F.2d at 173)).[8] "If the objector produces sufficient evidence to negate one or more of
14  the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity
15  of the claim by a preponderance of the evidence." *Lundell*, 223 F.3d at 1039 (quoting *In*
16  *re Consol. Pioneer Mortg.,*178 B.R. at 226 (internal quotations omitted)); *see also In re*
17  *Pugh*, 157 B.R. 898, 901 (9th Cir. BAP 1993) ("If the objector produces evidence sufficient
18  to negate the validity of the claim, the ultimate burden of persuasion remains on the
19  claimant to demonstrate by a preponderance of the evidence that the claim deserves to
20  share in the distribution of the debtor's assets.").

21  The Bankruptcy Court concluded in the Disallowance Order that "[t]he TTB Claim
22  is not a prima facie valid claim in that it fails to allege facts sufficient to support a legal
23  liability of HMT to the TTB." (ECF No. 62-2 at 434, 439.) The Disallowance Order reached
24  this conclusion after considering "representations and arguments of counsel at the hearing
25  on the [motion to disallow the TTB Claim]." (*Id.* at 438.) However, even if the Bankruptcy
26  ///

---

[8]To defeat the *prima facie* claim, the objector must "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Wright v. Holm* (*In re Holm*), 931 F.2d 620, 623 (9th Cir.1991).

Court properly concluded that the TTB Claim was not *prima facie* valid, as a matter of law, that was insufficient reason to disallow the Claim.

It is not firmly established whether the mere filing of a POC is sufficient alone to establish a *prima facie* valid claim or whether the POC itself must also be substantively sufficient. Of course, outside of the bankruptcy context it is axiomatic that a claim must be both procedurally proper and substantively viable. In any event, at the Hearing TTB made clear its argument that such is not the case in the bankruptcy context. TTB premises its contention that it met its *prima facie* burden in bringing its POC because the POC was executed and filed in accordance with applicable rules. (ECF No. 61 at 11–14.) TTB therefore focuses on the filing of a POC as a procedural prerequisite for bringing a claim in a bankruptcy case. There is in fact caselaw to support this position. *See, e.g.*, *In re Brown*, 82 F.3d 801 (8th Cir. 1996), *abrogated on other grounds by Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15 (2000) ("The presumption of the validity of the proof of claim is a procedural device that places the burden of producing evidence to rebut the presumption on the debtors.").

On the other hand, Debtors-Appellees also rely on caselaw which suggests that a POC entails a substantive requirement. (*E.g.*, ECF No. 66 at 23–26.) Specifically, Debtors-Appellees rely on the BAP decision in *In re Consol. Pioneer Mortg.* (*Id.*) In that case, the BAP relies on a Third Circuit case, explaining that for a claim to be *prima facie* valid, a claimant 'must allege facts sufficient to support the claim.' 178 B.R. at 226 (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d at 173). That means that the claim must provide "facts sufficient *to support a legal liability* to the claimant" for the claimant's *prima facie* burden to have been met, allowing the claimant to "go forward." *Id.* (internal quotations omitted and emphasis added).

*In re Consol. Pioneer Mortg.* also notes that a POC is *prima facie* valid under § 502(a) of Title 11 of the United States Code pursuant to Bankruptcy Rule 3001(f). 178 B.R. at 225; *see also Lundell*, 223 F.3d at 1039 (same); *cf.* 11 U.S.C. § 502(a) (providing that any proof of claim "is deemed allowed, unless a party in interest . . . objects"). Rule

8

3001(f) particularly provides that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." As relevant to the present inquiry, Rule 3001(d) provides that "[i]f a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected."

Based on the Court's reading of these rules, the Bankruptcy Court's conclusion that the TTB's Claim is *prima facie* invalid is supportable even if the Court also accepts TTB's position that the POC need only be executed and filed in accordance with applicable rules. The Court reads Rule 3001(d) to require that a POC show that there is a perfected security interest *in the debtor's property*. Here, the POC is accompanied by evidence showing a security interest—the Lien—perfected[9] as to a non-debtor's property, namely that of Twin River. (*See* ECF No. 62-1 at 461–72.) Therefore, looking at the four corners of the POC alone,[10] there is evidently no claim to a security interest in HMT's property.

However, such finding means only that TTB is not entitled to a *prima facie* presumption of validity,[11] not that its claim should be completely disallowed. In a decision after *In re Consol. Pioneer Mortg.*, the BAP made clear that failure to establish *prima facie* validity of a claim alone is not a reason for disallowance of a claim. *See, e.g.*, *In re Heath ("Heath")*, 331 B.R. 424, 425 (B.A.P. 9th Cir. 2005).[12] *Heath* also explains that in *In re Consol. Pioneer Mortg.*, the claim was "properly" disallowed because "the claim was not

///

---

[9]"United States' tax liens are perfected upon assessment; no further action is required." *In re Reisbeck*, 505 B.R. 546, 550 (Bankr. D. Mont. 2014) (citing *United States v. Vermont,* 377 U.S. 351, 355 (1964)).

[10]*See, e.g.*, *In re Residential Capital, LLC*, No. 12-12020 (MG), 2013 WL 5952004, at *4 (Bankr. S.D.N.Y. Nov. 7, 2013) ("The Court must assess proofs of claim based on what is presented in the four corners of the attached documents.").

[11]*See, e.g.*, *In re Am. Home Mortg., Holdings, Inc.*, 501 B.R. 44, 62 (Bankr. D. Del. 2013) ("Pursuant to Federal Rule of Bankruptcy 3001, where a proof of claim does not provide the facts and documents necessary to support the claim, it is not entitled to the presumption of *prima facie* validity.")

[12]*See also In re Ganas*, 513 B.R. 394 (Bankr. E.D. Cal. 2014) (citing *Heath*).

only procedurally defective, under Rule 3001(c), but also substantively lacked merit." *Id.* at 433 (citing *In re Consol. Pioneer Mortg.*, 178 B.R. at 227).) *Heath* requires the objector to a claim—here Debtors-Appellees—to have argued or provided evidence supporting that the claimant's claim should be disallowed based on the exclusive grounds for disallowance under § 502(b) for disallowance to be justified. *Id.* at 426.[13]

In *Heath*, the BAP affirmed the bankruptcy court's decision to allow the creditor's claim because the debtors "filed objections . . . relied solely on the alleged lack of *prima facie* validity of the proofs of claim." *Id.* at 437. The amount of credit card debt was at issue there and the BAP suggested that the debtors should have contacted the creditors "for appropriate documentation of any claims that they reasonably believed they might not owe, or might owe in a different amount" *Id.* The BAP concluded that attack on the *prima facie* validity of the claim was an insufficient objection under § 502. *Id.* at 438. This is because "[§] 502 . . . deems claims allowed and directs that the bankruptcy court 'shall' allow claims with limited exceptions that were not alleged by [the d]ebtors." *Id.*

Relevantly, TTB argues that Debtors-Appellees' Objection should have been overruled because it contained no evidence but a declaration denying that HMT was liable for the tax at issue. (*E.g.*, ECF No. 61 at 15; ECF No. 69 at 10.) But TTB also concedes that "[t]he Objection to the TTB Claim attached a declaration of Angela Smith ("Smith")[14] stating that the TTB Claim is overstated and that HMT owes no obligation to the TTB, and exhibits consisting of the TTB Claim, a copy of the notice of federal tax lien filed against Twin River, and a spreadsheet showing Smith's calculation of the amount of excise tax owed." (ECF No. 69 at 10 n.3 (citing ECF No. 62-2 at 24–48 (Exh. 13)).)

///

---

[13]*Cf. In re Ahmadi*, 467 B.R. 782, 788 (Bankr. M.D. Pa 2012) ("Without the *prima facie* presumption, the burden of proof shifts back to the claimant to prove its claims by a preponderance of the evidence. Accordingly, with any objection to a proof of claim, the key inquiry is whether the presumption of prima facie validity has been established . . ..") (emphasis added).

[14]Smith served as Debtors-Appellees' Finance manager from January 2015 through January 2017, their Director of Finance from January 2017 through May 25, 2018, and their Chief Financial Officer since June 25, 2018. (ECF No. 62-2 at 25.)

Notably, under § 502, a claim is disallowed where "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1).[15] In their Objection, Debtors-Appellees expressly relied on § 502(b)(1) and argued *inter alia*, that TTB has no valid claim against HMT because, among other things, no tax lien was filed against HMT and TTB has no allowable secured claim under § 506 of the Bankruptcy Code. (ECF No. 62-2 at 14–20.) This, of course, was accompanied by the declaration and other information TTB admittedly acknowledges. Therefore, Debtors-Appellees did more than argue the claim was *prima facie* valid and did in fact argue a ground for disallowance under Rule 502, although this is not expressed in the Disallowance Order.

But even assuming that the Objection was also enough for Debtors-Appellees to carry their burden—and the Court does not make that finding here—the record shows that TTB argued and attached records to its opposition to the Objection ("Opposition"), contending that HMT was liable for the Lien. (*E.g.,* ECF No. 62-2 at 56–60, 69–71 (declaration of Nancy M. Lalic, Auditor in Charge for the Alcohol and Tobacco Tax and Trade Bureau); 201 (letter from HMT dated February 29, 2016, stating "*Our* Quarter 1 - 2015 Federal Excise Tax Return For Twin River Contract Loading, Inc. . . . was filed on 12/31/2015 and *we owed* $1,134,344. At that time $400,000 was paid toward that return. Included in this correspondence is the balance owing of $737,344 in multiple checks . . ..") (emphasis added); 203–07(connecting Twin River to bank account ending in 992); 230–46 (showing same bank account on checks issued by HMT to TTB); 248–49 (email exchange between Smith and Lalic, which at minimum provides that the HMT account is the same as what was Twin River's account).) Based on this evidence, among other things, TTB argued that HMT is liable for the Lien because HMT, along with the other

///

---

[15] *See also* § 502(b)(1) (providing for disallowance where the claim is for a tax assessed against the property of an estate and the claim exceeds the value of the interest of the estate in that property).

Debtors, Twin Rivers and Big Canyon had been operating on a consolidated basis, filing consolidated income tax returns and financial statements as well as using one bank account, ending in 992 (*e.g.*, ECF No. 61 at 15, 21; *see also* ECF No. 62-2 at 27 (Smith stating that Twin River is "a wholly-owned subsidiary of HMT").) *See also United States v. Bess*, 357 U.S. 51, 57 (1958) ("The transfer of property subsequent to the attachment of the lien does not affect the lien, for it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes *cum onere*") (internal quotations and citations omitted); *In re Isom*, 901 F.2d 744, 746 & n.3 (9th Cir. 1990) ("Congress intended for valid tax liens to survive bankruptcy" . . . The better approach is to determine the legal enforceability of the liability by referring to the relevant law affecting the liens. In this case, we refer to the bankruptcy code to determine if the liability is legally enforceable.").

Based on, *inter alia*, representations at the Hearing, TTB also rests its claim of liability on the contention that HMT manufactures and/or produces ammunition. The parties dispute whether HMT is of this status and therefore required to pay an excise tax to TTB. (*E.g.*, ECF No. 61 at 21; ECF No. 66 at 31.) Under 26 U.S.C. § 4181, a tax is imposed on manufacturers and producers of firearms and ammunition. Debtors-Appellees rely principally on Smith's declaration and supplemental declaration, contending that HMT never manufactured or produced ammunition. (*E.g.*, ECF No. 66 at 31; ECF No. 62-2 at 29 (Smith's declaration stating "HMT has never manufactured or produced ammunition. Accordingly, HMT believes that it owes no obligation to the TTB"); *id.* at 327–34 (Smith's supplemental declaration denying TTB's allegations but providing no documentary support for the denials).) TTB relies on HMT's audited financial statements and invoices, among other things, connecting HMT's revenue to the manufacture and sale of ammunition. (*E.g.*, ECF No. 61 at 17–19; ECF No. 62-2 at 73–199 (invoices of sales of finished ammunition provided by Smith during the examination audit of Twin River's excise tax liabilities); *id.* at 263 ("The Company [HMT] generates the majority of its revenue and earnings from the manufacture and sale of small arms ammunition components and assembled ammunition.").)

The records before the Court, however, provide no basis for this Court to conclude that the Bankruptcy Court considered—or adequately considered—the parties' evidence, especially what TTB produced. This is because the Bankruptcy Court made no oral ruling in sustaining the Objection. (*E.g.*, ECF No. 62-2 at 399.) Further, beyond the conclusion that the TTB Claim was not *prima facie* valid, the Disallowance Order does nothing more than state that TTB failed to meet its evidentiary burden. (ECF No. 62-2 at 434, 439.) But "Civil Rule 52(a) requires that the bankruptcy court find the facts specifically and state its conclusions of law separately." *In re Bencomo*, 2015 WL 3451546, at *4. The Bankruptcy Court's failure to "make sufficient findings" is an abuse of discretion. *Id.* The Court is not able to appropriately review the parties' arguments absent adequate findings by the Bankruptcy Court. *See id.*

Accordingly, the Court finds this matter should be remanded for the record to be developed to expressly consider the parties' evidence and to provide the factual and legal basis for the Bankruptcy Court's first two findings concerning the validity of the TTB Claim. *See, e.g.*, *In re First Yorkshire Holdings, Inc. supra* (providing that a judgment may be vacated and case remanded where findings are insufficient); *In re Bencomo*, 2015 WL 3451546, at *4 (same).

**B.     The Bankruptcy Court's "No Allowed Secured Claim" Finding**

A determination of the issue of whether TTB's claim should be allowed against HMT extends into the finding that TTB "has *no allowed secured claim* against any Debtor pursuant to [§] 506 of the Bankruptcy Code." (*E.g.*, ECF No. 62-2 at 434 (emphasis added).) Again, the Court is not able to decipher the basis for this determination due to the insufficiency of the Bankruptcy Court's findings.

Concerning this finding the Disallowance Order specifically states:

> For the reasons set forth in the Motion and the Reply, including, without limitation, that the TTB has filed no lien against the assets of HMT or any other Debtor, the TTB has no allowed secured claim against any Debtor pursuant to [§] 506 of the Bankruptcy Code.

///

13

(*Id.*) The Bankruptcy Court needs to be more specific in its findings particularly as such findings are presumably buttressed by legal conclusions. To the extent the Disallowance Order expressly premised the finding of "no allowed secured claim" on the absence of a lien filed specially against HMT, the caselaw noted above suggests that an allowable claim may exist to the extent HMT has property rights in Twin River to which the Lien might attach. *See Bess*, 357 U.S. at 57. Moreover, because the finding of whether TTB has a valid claim overlaps with the question of whether it has an "allowed secured claim" under § 506, the Court likewise remands for further consideration on this issue. *See, e.g.*, *Demarah v. United States*, 188 B.R. 426, 432 (E.D. Cal. 1993), *aff'd sub nom. In re DeMarah*, 62 F.3d 1248 (9th Cir. 1995) (referencing *Dewsnup v. Timm,* 502 U.S. 410, 414 (1992)) ("[T]he Supreme Court held that a claim is an allowed, secured claim for purposes of [§] 506(d) if it is allowed under [§] 502.").

### C. Adversary Hearing and/or Evidentiary Hearing

TTB argues that the Disallowance Order should be reversed for Debtors-Appellees to file an adversary proceeding if they wish to contest the extent and validity of the Lien (*e.g.*, ECF No. 61 at 29; ECF No. 69 at 19). However, while TTB expressed its position that an adversary proceeding was needed in the Bankruptcy Court (*e.g.*, 62-2 at 53, 60), that court did not rule on the issue—likely because Debtors-Appellees did not initiate an adversary proceeding. Nevertheless, the Court concludes that such a proceeding is unwarranted under the instant circumstances. It is apparent that an adversary proceeding is not necessary where, for example, the Lien may be voided under § 506(d). *See In re Junes*, 99 B.R. 978, 980 (9th Cir. BAP 1989) (citing reference omitted) (recognizing that "[i]t is clear under the Code that any statutory lien that is valid under state law remains valid through the bankruptcy *unless invalidated by some provision of the Code*") (emphasis added); *Demarah*, 188 B.R. at 432 ("11 U.S.C. [§] 506(d) provides that a lien is void to the extent that it secures a claim against the debtor that is not an allowed secured claim."). Accordingly, TTB's request that Debtors-Appellees be required to bring an adversary proceeding is denied.

As noted above, TTB also argues that there are material disputes of fact that required the Bankruptcy Court to conduct an evidentiary hearing. (ECF No. 61 at 10–11, 19–23.) TTB particularly contends Bankruptcy Rule 9014 requires that the Bankruptcy Court resolve the contested matters only after holding an evidentiary hearing at which the testimony of witnesses is taken in the same manner as in an adversary proceeding. (Id.) Rule 9014 is in accord with TTB's contention to the extent the Bankruptcy Court in fact concluded there are disputed material facts. Fed. R. Bankr. P. 9014 (d) ("Testimony of witnesses with respect to disputed material factual issues shall be taken in the same manner as testimony in an adversary proceeding."). The Rule otherwise provides only for a hearing—as was conducted in this case. Fed. R. Bankr. P. 9014 (a) ("In a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought.").[16] However, the Court cannot say with certainty that the Bankruptcy Court concluded that there were no disputed issues of material fact based on the record before it and the parties' relative evidence. Therefore, on remand the Bankruptcy Court should also expressly determine whether there are material factual disputes necessitating an evidentiary hearing.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court on appeal.

///

///

///

---

[16] Cf. Lundell, 223 F.3d at 1039 (citing Adv. Comm. Notes to Fed. R. Bankr. P. 9014) ("The filing of an objection to a proof of claim 'creates a dispute which is a contested matter' within the meaning of Bankruptcy Rule 9014 and must be resolved after notice and opportunity for hearing upon a motion for relief.").

It is therefore ordered that the Disallowance Order is vacated and the matter is remanded to the Bankruptcy Court for that court to make appropriate findings as suggested herein.

It is further ordered that TTB's request that Debtors-Appellees be required to bring an adversary proceeding is denied for the reasons stated herein. However, the Bankruptcy Court must make an expressed determination as to whether an evidentiary hearing is warranted to the extent it finds material disputes of fact as to the validity of the TTB Claim and whether there is an allowed secured claim.

It is further ordered that the Clerk of the Court enter judgment in accordance with this Order with respect to the fourth appeal, Case No. 3:20-cv-00117-MMD (ECF Nos. 61, 66, 69).

DATED THIS 31st day of July 2020.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE